UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM C. DOUGHERTY and ANARGYROS KEREAKES, individually and on behalf of other similarly situated members of the Chicago Police Department, ) ) ) ) ) | | |
| Plaintiffs, ) ) | | |
| v. ) ) | 15 C 10975 | |
| CITY OF CHICAGO, an Illinois Municipal Corporation, ) ) ) ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION

### CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant City of Chicago's ("City") Motion to Dismiss ("Motion") Count II of the Third Amended Complaint ("TAC") brought by Plaintiffs William Dougherty, Anargyros Kereakes, and the putative class (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the City's Motion is granted in part and denied in part.

### BACKGROUND

The Court accepts as true the following well-plead allegations from Plaintiffs' TAC and attached exhibits. All possible inferences are drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiffs bring this action on behalf of two putative classes, only one of which is relevant to the instant Motion. The relevant class is defined as all current and former Chicago Police Department ("CPD") members who, on or after July 1, 2007, worked any one or more of the City's "special employment programs."[1] The City is an employer within the meaning of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/2. Plaintiffs state that the named plaintiffs and putative class members have been employees of the City at all relevant times within the meaning of the IWPCA, as well.

The City also operates under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. Ch. 8, which entitles Plaintiffs to overtime wages at the rate of one and one-half times the regular rate at which they are employed, for hours worked in excess of 171 hours in a twenty-eight-day work period. Plaintiffs allege that the City failed to include any of the hours that Plaintiffs worked in special employment programs into the total hours worked in a twenty-eight-day work period. Consequently, the City failed to compensate Plaintiffs for all hours worked in excess of 171 hours per work period.

Plaintiffs allege that this failure in compensation violated the "wage agreements" between Plaintiffs and the City. Of the six exhibits attached to the TAC, three are copies of collective bargaining agreements ("CBAs") between the City and

---

[1] The other class covers CPD members who earned "out-of-grade" pay. Plaintiffs concede that any out-of-grade pay claims are confined to Counts I and III. Therefore, the Court does not address the out-of-grade class' claims and allegations.

2

the parties (Exhibits 3, 4, and 5 are excerpts from the CBAs reached between the City and CPD Patrol Officers, Sergeants, and Lieutenants, respectively). The Sergeants' and Lieutenants' CBAs each contain an identical clause entitled "Compensation for Overtime," that reads in pertinent part:

> For hours in excess of 171 in a twenty-eight- (28-) day period, the overtime rate will be calculated in accordance with the [FLSA].... A Sergeant/Lieutenant who earns overtime pursuant to the FLSA shall be paid overtime compensation. A Sergeant/Lieutenant who earns non-FLSA overtime shall have the option of electing pay or compensatory time consistent with the provisions of this Agreement.

In a similar provision, the Patrol Officers' CBA provides:

> An Officer who earns overtime pursuant to the federal Fair Labor Standards Act (FLSA) shall be paid overtime compensation at the FLSA rate agreed upon by the parties. An Officer who earns non-FLSA overtime shall have the option of electing pay or compensatory time consistent with the provisions of this Agreement.

The TAC does not explicitly define what is encompassed by "non-FLSA overtime," nor does it highlight any sections in the CBAs that might so articulate the term.

However, outwardly distinct from their overtime allegations, Plaintiffs allege that the City also violated its wage agreements with CPD Sergeants and Lieutenants when it "failed to pay them a rank credit of three-quarters of one-hour for each instance of working more than four hours in any [special employment programs]." Indeed, the Sergeants' and Lieutenants' CBAs contain duplicate clauses entitled "Rank Credit," which read in relevant part:

> The Employer will credit each Sergeant/Lieutenant with forty-five (45) minutes per day of compensatory time. Said forty-five (45) minutes per

3

>day will be credited for each day on which a Sergeant/Lieutenant works, provided the Sergeant/Lieutenant works at least four (4) hours that day.

On October 6, 2017, the City moved to dismiss Count II of Plaintiffs' TAC. Count II alleges that the City violated the IWPCA by failing to pay Plaintiffs all compensation and wages due to them in accordance with the wage agreements between the parties.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," and may be considered in a

4

district court's ruling on a motion to dismiss. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

Finally, a note on the extensive argument in Plaintiffs' response brief concerning information not contained in the TAC or its attached exhibits. The new matter raised in Plaintiffs' response is just that, new, and it is discussed largely in an effort to expand the Court's field of vision into distinct factual matter not alleged in the TAC. This is improper, and we reiterate verbatim our prior dictate regarding the introduction of new material at the 12(b)(6) briefing stage. "We will consider additional information in a responsive brief to a motion to dismiss to the extent that it is supplemental and consistent with the complaint and clarifies the information in the complaint. However, we will not consider additional information in the response that is inconsistent with the complaint, expands the plaintiff's case, or concerns new claims and new topics." *Anzaldua v. Chicago Transit Authority*, 2002 WL 31557622, *3 (N.D. Ill. Nov. 15, 2002) (*citing Alioto v. Marshal Field's & Co.*, 77 F.3d 934 (7th Cir. 1996)).

## DISCUSSION

The IWPCA states that wages "shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties…." 820 ILCS 115/2. "The only thing [the IWPCA] requires is that the

5

employer honor his contract." *National Metalcrafters, Div. of Keystone Consol. Industries v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986). While the IWPCA "does not establish a substantive right to overtime pay or any other kind of wage," a cause of action may lie "based on wrongfully held compensation pursuant to a contract or agreement." *Enger v. Chicago Carriage Cab Co.*, 77 F.Supp.3d 712, 715—16 (N.D. Ill. 2014). "Therefore, plaintiffs suing under the IWPCA must allege that compensation is due to them under an employment contract or agreement." *Id*. at 716 (internal quotation marks omitted).

As a threshold matter, it is readily apparent to the Court that an agreement was reached between the parties requiring the City to compensate Plaintiffs for overtime work. The CBAs could not state more clearly that the City agreed to pay Plaintiffs pursuant to FLSA.[2] What is less clear is whether that agreement, or any others, are actionable under the IWPCA.

To state an IWPCA claim, Plaintiffs "must point to an agreement that is more than an allegation that the employer is bound by existing overtime laws." *Brand v. Comcast Corp*. 2013 WL 1499008, *6 (N.D. Ill. Apr. 11, 2013). Plaintiffs argue that because the "wage agreements are explicitly worded and do not merely state that the employer must follow federal and state overtime laws," the agreements fall under

---

[2] Plaintiffs argue extensively that there was an agreement concerning overtime pay between Plaintiffs and the City. Presumptively in support of this contention, Plaintiffs direct the Court's attention (without elaboration) to its decision in *Bartlett v. City of Chicago*, 2015 WL 135286 (N.D. Ill. Jan. 9, 2015). *Bartlett* does indeed demonstrate that agreements between the City and Plaintiffs can ground IWPCA claims. However, while the City does argue briefly, and ineffectively, that there was no agreement here, the crux of its argument effectively concedes that some agreement exists, and instead hinges on issues more closely related to preexisting legal duties that subsume any IWPCA claim. *Bartlett* largely avoids this matter; it has little bearing on the Court's decision today.

IWPCA's umbrella. Not only does this argument blatantly mischaracterize Plaintiffs' own attached exhibits, but it is also provided to the Court without citation to any legal support at all.

First, the Patrol Officers' CBA is not, by its own terms, "explicitly worded." It merely states that officers will be paid overtime in accordance with the FLSA. The Court is hard-pressed to unpack exactly how such a characterization is anything but an acknowledgement that "the employer must follow federal and state overtime laws." Second, the Sergeants' and Lieutenants' CBAs mimic the Patrol Officers' CBA by reiterating that overtime compensation is due at the FLSA rate. The Sergeants' and Lieutenants' CBAs also restate the FLSA requirements for hours in a work period that must be hit before overtime kicks in. This restatement does not amount to a brand new agreement untethered from the strictures of the FLSA. Rather, it helpfully clarifies what federal law requires the City to do.

Plaintiffs' argument, that the CBAs' restatement of FLSA requirements amounts to an agreement representative of something more than an obligation to abide by existing law, rings hollow. Plaintiffs point to nothing in the CBAs concerning the overtime compensation structure that in any way departs from what the FLSA requires of the City. An agreement to pay what is already required by law is insufficient to state a claim under the IWPCA. *See Pavur v. Illinois Bell Telephone Company*, 2016 WL 278886, \*3 (N.D. Ill. Jan. 21, 2016) (dismissing an IWPCA claim where the policy at issue indicated the defendant's "intention to comply with its statutory

7

obligations, and does not create a separate, actionable employment agreement"); *see also House v. Illinois Bell Tel. Co.*, 148 F.Supp.3d 701 (N.D. Ill. 2015) (dismissing an IWPCA claim where the policy at issue did "no more than memorialize [the defendant's] commitment to abide by state and federal laws and applicable collective bargaining agreements").

Plaintiffs also allege in Count II that "[a]dditionally, or alternatively, [the City] administered an unlawful compensation system…in accordance with past practice." Plaintiffs devote significant briefing to arguing that past practices, in general, can amount to an agreement between the parties, the breaking of which can sustain an IWPCA claim. Plaintiffs fail, however, to explain how any of the City's alleged past practices differed from the practices required of them under the FLSA. As we have already made clear, any agreement between the City and Plaintiffs, even one evinced solely by past practice, must have amounted to more than an agreement to abide by existing law. Plaintiffs do not allege even this much in the TAC. Frankly, Plaintiffs' allegation, that the City's past practice amounts to an agreement distinguishable from its promise to abide by the FLSA, is grounded in little more than one throwaway statement in Count II and a reference to the policies provided in Exhibit 6. As to the documents in Exhibit 6, the Court can find no City policy therein that establishes a past practice requiring overtime compensation different from that required by the FLSA.

However, it appears to the Court that the parties may have entered into an agreement concerning rank credits, separate from the overtime pay structure, that falls beyond the requirements of the FLSA. The allegation that the City failed to pay rank credits, Plaintiffs argue, "is explicitly tied to the wage agreements under the IWPCA and is not based upon FLSA or [Illinois Minimum Wage Law] overtime earned." Plaintiffs contends that this claim arises from the City's failure to pay such credits "regardless of whether the hours worked were above or below the 171-hour threshold."

This allegation is well-plead, is grounded in both the Sergeants' and Lieutenants' CBAs, and in neither the CBAs nor the TAC does it refer to FLSA or the Illinois Minimum Wage Law ("IMWL"). Rather, the "Rank Credit" sections refer only to "compensatory time," making no mention of overtime pay or FLSA requirements. Moreover, the City declined to address this matter in both its initial Motion and its reply brief, despite Plaintiffs' discussion of the allegation in their response.

On the face of the TAC, the rank credits language in the CBAs manifests an agreement between the parties to compensate Sergeants and Lieutenants at some unidentified rate, but one not obviously required by federal or state law. The TAC states plainly that the City failed to so compensate Plaintiffs. If proven true, this is the sort of failure to honor an agreement that would sustain an IWPCA claim. And finally, of note, the claim goes unopposed by the City. The Court finds that Plaintiffs

9

have sufficiently stated a claim that the City's alleged failure to compensate Plaintiffs in keeping with the agreement concerning rank credits was a violation of the IWPCA.

In keeping with the above stated conclusions, the Court rules as follows. Plaintiffs have failed to sufficiently allege that there was an agreement between the parties requiring the City to compensate Plaintiffs for overtime work in special employment programs in a manner any way distinguishable from the City's preexisting legal requirements under the FLSA and IMWL. As far as Count II raises a claim that Plaintiffs were denied adequate overtime compensation under the IWPCA, the City's Motion is granted and such a claim is dismissed. However, as far as Count II raises a claim that Plaintiffs were denied compensation for time working pursuant to the "Rank Credit" agreement reached between the parties, the City's Motion is denied and such an IWPCA claim under Count II may proceed.[3] It is so ordered.

## CONCLUSION

For the aforementioned reasons, the City's Motion to Dismiss Count II is granted as to inadequate compensation for overtime work, but denied as to inadequate compensation pursuant to the rank credits agreement. It is so ordered.

_____

Dated: 11/14/2017

Charles P. Kocoras
United States District Judge

---

[3] Because the rank credits language appears only in the Sergeants' and Lieutenants' CBAs, and not the Patrol Officers', the Court remains skeptical that the claims are common of the class. However, because the City has declined to challenge this aspect of Count II, and it is otherwise plead sufficiently to state a claim, the Court is as-of-yet unequipped to dispose of the claim on such grounds.