**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM C. DOUGHERTY and ANARGYROS KEREAKES, individually and on behalf of other similarly situated members of the Chicago Police Department, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 10975 |
| CITY OF CHICAGO, an Illinois Municipal Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are Plaintiffs William Dougherty ("Dougherty") and Anargyros Kereakes ("Kereakes") (collectively, "Plaintiffs") and Defendant City of Chicago's ("City") cross-motions for summary judgment under Federal Rule of Civil Procedure 56.[1] For the following reasons, the Court will grant the Plaintiffs' motion and deny the City's motion.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

---

[1] The parties have agreed to bifurcate the issues of damages and liability and are only moving for summary judgment as to liability.

**The Parties**

Plaintiff Dougherty is a Police Officer with the Chicago Police Department ("CPD") and Plaintiff Kereakes is a Sergeant with the CPD. The City is a municipal corporation under the laws of the State of Illinois. The CPD is an agency of the City engaged in law enforcement activities. The City is an employer under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1.

**The Collective Bargaining Agreements**

The City has entered into collective bargaining agreements ("CBA") with the Fraternal Order of Police, Lodge No. 7 ("FOP"), which represents Police Officers, the Policemen's Benevolent & Protection Association of Illinois, Unit 156-Sergeants ("Sergeants Union"), and the Policemen's Benevolent & Protective Association of Illinois, Unit 156-Lieutenants ("Lieutenants Union").

Under the Sergeants' and Lieutenants' (collectively, "Supervisors") CBAs, Supervisors were to be paid "Rank Credit." Rank Credit is a form of compensation where Supervisors receive pay for an extra three-quarters of an hour (i.e. 45 minutes) for each day they work over four hours. Rank Credit was established in 1994 in CPD Orders G.O. 94-05-02, and its replacement E02-02-02, and has existed since.

Under the CBAs, Supervisors were also to be paid Duty Availability Pay ("DAP") and "Supervisor's Quarterly" every quarter. Both payments are lump sums in

an amount specifically set out in the CBAs. Police Officers were also paid DAP under their CBA, but not Rank Credit or Supervisor's Quarterly.

**Case-Related Programs**

At various times, the CPD established special voluntary opportunities for Officers and Supervisors ("Case-Related Programs"). These Case-Related Programs include: Seat Belt Enforcement, POTUS Detail, Saturation Patrol, Violence Reduction Initiative ("VRI"), and VRI Supplemental. Supervisors were authorized to work in some, but not all, of these Case-Related Programs.

The majority of the overtime hours at issue were generated while working VRI. The CPD implemented VRI in 2012 to ensure public safety and curb violence within certain areas of the city. Officers and Supervisors volunteered to participate in VRI and covered VRI shifts on their regular days off or on furlough days. VRI consisted of being "highly visible on foot patrol," enforcing ordinance violations, parking issues, moving violations, and addressing police calls. When Officers and Supervisors worked VRI, they were assigned to particular areas of the city that did not correspond to their regularly assigned unit or supervisory structure.

**Timekeeping**

The CPD used a paper-based record system to keep track of Officers' and Supervisors' hours. The hours are reflected on a Time and Attendance Card ("T&A Card"). As a result, regular-duty, contract overtime hours, FLSA overtime hours, and

3

Rank Credit are manually calculated by timekeeping personnel and reflected on a T&A Card.

When Plaintiffs worked an overtime shift, CPD required them to submit an Overtime/Compensatory Time Report, commonly called a "Yellow Sheet". When the overtime was approved by a supervisor, it was submitted to timekeeping personnel to enter the information into the Citizen and Law Enforcement Analysis and Reporting ("CLEAR") system. The overtime information is also manually transcribed onto a T&A Card. At the end of a 28-day pay period, the information from a T&A Card is transcribed onto another handwritten document called a Pay Listing. The Pay Listing is given to CPD Payroll and entered into the Chicago Integrated Personnel and Payroll Systems ("CHIPPS"). The CLEAR system and CHIPPS were independent and did not communicate.

The Case-Related Programs were electronically scheduled, recorded, and approved through the CLEAR system and were not recorded on an Officer or Supervisor's T&A Card. As a result, hours worked in a Case-Related Program did not count toward the FLSA's 171-hour overtime threshold. In addition, Rank Credit was not paid to Supervisors for working Case-Related Programs.

Based on these facts, Plaintiffs filed their Fourth Amended Complaint on January 26, 2018. Plaintiffs allege violations of: the FLSA by not counting hours worked in Case-Related Programs toward overtime (Count I); the IWPCA by not paying supervisors Rank Credit for working Case-Related Programs (Count II); and the IMWL

4

by not counting Case-Related Program hours worked in Case-Related Programs toward overtime (Count III). On December 27, 2019, both parties moved for summary judgment under Rule 56.

## LEGAL STANDARD

For cross-motions for summary judgment, the Court must "look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Santanella v. Metro Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). Our factual and inferential construction is unaltered by the procedural nuance of cross-filings, for each party retains their "respective burdens on cross-motions for summary judgment." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed. Appx. 92, 95 (7th Cir. 2012).

## DISCUSSION

Plaintiffs argue that they are entitled to summary judgment on all three counts of their complaint. The City argues that the Plaintiffs cannot succeed on any of their claims. Specifically, the City argues that Supervisors are not entitled to Rank Credit for working Case-Related Programs, its FLSA and IMWL liabilities are limited as a matter of law, injunctive relief is not available, and the claims for retroactive wage

5

increases are partially time-barred by the statute of limitations. We address each argument in turn.

**I.     IWPCA Rank Credit Claim**

The IWPCA gives employees "a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). However, the IWPCA narrowly defines wages as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties. . . ." 820 ILCS 115/2. "As such, to state a claim under the IWPCA, the [plaintiffs] are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Enger*, 812 F.3d at 568 (citing *Dominguez v. Micro Ctr. Sales Corp.*, 2012 WL 1719793 (N.D. Ill. 2012) ("[T]he IWPCA mandates overtime pay or any other specific kind of wage only to the extent the parties' contract or agreement requires such pay.")). As the Seventh Circuit has held, "the IWPCA provides no substantive relief beyond what the underlying employment contract requires." *Enger*, 812 F.3d at 570.

Plaintiffs argue that they are entitled to summary judgment on the IWPCA claim because the CBAs require the City to pay Rank Credit for working Case-Related Programs. The City argues that the IWPCA claim fails for three reasons. First, the City argues that the claim is preempted by the Illinois Public Labor Relations Act, 5 ILCS § 315/1 et seq. ("IPLRA"). Second, the City argues no agreement exists to pay Supervisors Rank Credit for the Case-Related Programs. Last, the City argues that the

6

Supervisors waived any entitlement to Rank Credit for working Case-Related Programs. We address each argument in turn.

### a. Preemption by the IPLRA

The City argues that Plaintiffs' Rank Credit claim under the IWPCA is preempted by the IPLRA because the claim requires a "deep dive" into the meaning of "work" under the CBAs. We disagree.

The Seventh Circuit has identified several scenarios where a CBA may be implicated as part of a state or federal cause of action, but preemption of the claim is unnecessary. *Wisconsin Cent. Ltd. V. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008). "Such examples include: (1) when the particular contractual provision is so clear as to preclude all possible dispute over its meaning; (2) if the parties do not dispute the interpretation of the relevant CBA provisions; or (3) where reference to the CBA is only necessary for computing damages." *Id.* (cleaned up).

Under Illinois law, "The cardinal rule [of contract construction] is to give effect to the parties' intent, which is to be discerned from the contract language." *Virginia Surety Co. v. Northern Ins. Co. of New York*, 224 Ill.2d 550, 556 (2007). The Court "must initially look to the language of [the] contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (2007). "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.*

7

The Court may only consider extrinsic evidence to determine the parties' intent if the contract language is ambiguous. *Id.* Language is ambiguous if it is susceptible to more than one meaning. *Id.* Undefined terms are generally given their "plain, ordinary, and popular meaning" as found in dictionary definitions. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 453 (7th Cir. 2012) (applying Illinois law). "[T]he 'plain meaning' of the contract controls even though the parties themselves may have placed a different meaning on it." *CSFM Corp. v. Elbert & McKee Co.*, 870 F. Supp. 841, 849 (N.D. Ill. 1994).

The Sergeant's CBA provides: "The Employer will credit each Sergeant with forty-five (45) minutes per day of compensatory time. Said forty-five (45) minutes per day will be credited for each day on which a Sergeant works, provided the Sergeant works at least four (4) hours that day."[2] 1:15-cv-10975, Dkt. # 261-1, pg. 43. We believe that this language is unambiguous and does not require a "deep dive." As defined in the Oxford English Dictionary, work means "Action or activity involving physical or mental effort and undertaken in order to achieve a result, esp. as a means of making one's living or earning money." *Work*, *Oxford English Dictionary* (3d Ed. 2014); *see also Plumley v. Southern Container, Inc.*, 303 F.3d 364, 370 (1st Cir. 2002) ("For legal purposes, the standard definition of 'employment' is 'work for which one

---

[2] The Lieutenants' CBA contains an identical Rank Credit provision for Lieutenants. 1:15-cv-10975, Dkt. # 261-2, pg. 43.

8

has been hired and is being paid by an employer.' By like token, the word 'work' is defined in its verb form as 'to exert effort; to perform, either physically or mentally.'").

Supervisors working Case-Related Programs wore their CPD uniforms, used CPD equipment, and performed law enforcement services on behalf of the CPD. These actions are unquestionably "work," even if they are not part of a Supervisor's regular day-to-day work. Simply put, when Supervisors perform duties as part of a Case-Related Program, they are performing work as law enforcement officials for the CPD. Therefore, the CBA does not require a "deep dive" into the parties' actions in order to define "work." Accordingly, the Plaintiffs' claims are not preempted by the IPLRA.

    **b.**    **Agreement to Pay Rank Credit for Case-Related Programs**

The City argues that there was no agreement between the Supervisors and the City to pay Rank Credit for the Case-Related Programs because the parties never intended for the Rank-Credit provision of the CBA to apply to Case-Related Programs. We disagree.

As discussed above, the Supervisors' CBAs provide for Rank Credit for each day the supervisors work for at least four hours. Giving the plain meaning to "work," it is clear that the parties agreed to pay Rank Credit for the Case-Related Programs. Further, the CBAs state:

> The parties acknowledge that, during the negotiations which preceded this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining. The understanding and agreements arrived at by the parties after the exercise of that right and

9

>opportunity are set forth in this Agreement. Dkt # 261-1, pg. 68 (Sergeants' CBA); Dkt. # 261-2, pg. 68 (Lieutenants' CBA).

If the parties intended for "work" to mean anything other than its plain meaning, they would have discussed the issue and expressed that intent in the CBAs. Similarly, if the parties intended for the Supervisors to not receive Rank Credit for working the Case-Related Programs, that intent would also have been expressed in the CBAs. The parties did not express either of these intentions. Accordingly, we find that there is an agreement to pay Rank Credit to the Supervisors for working Case-Related Programs.

### c. Waiver

The City next argues that the Supervisors waived their entitlement to receive Rank Credit for the Case-Related Programs because the union presidents agreed, after the CBAs were executed, that Rank Credit would not be paid for working Case-Related Programs and Supervisors worked Case-Related Programs knowing that they would not be paid Rank Credit. We disagree.

The City's argument is essentially that the CBAs were modified to not provide for Rank Credit to Supervisors for working Case-Related Programs. Illinois law places a "duty to bargain collectively" on public employers and unions representing public employees. 5 ILCS 315/7. As such, if the parties wish to modify the CBA in any way, the party making the modifications must serve a written notice on the other party 60 days prior to the modification taking effect. *Id.* The parties must then meet and confer to negotiate the requested modification. *Id.* The record does not show that these

10

requirements were met; the parties did not follow the procedure to collectively bargain and negotiate a new CBA. The record shows that the CPD merely told the union presidents Rank Credit would not be paid and nothing more.

Further, the CBAs are fully integrated contracts. As such, extrinsic evidence cannot be used in contract construction. *City of Countryside v. City of Countryside Police Pension Bd. of Trustees*, 2018 IL App (1st) 171029, ¶ 43. Therefore, even if the CPD reached an oral agreement with the unions without following the proper modification procedures, this agreement cannot modify the CBA. *Id.* at ¶ 43–44 (written agreement outside CBA did not modify or otherwise effect the CBA because the CBA was fully integrated and the parties did not go through the proper process to modify the CBA). Accordingly, we find that the CBAs were not modified in any way.

### d. Plaintiffs' Claim

To succeed on their IWPCA claim, Plaintiffs must "demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Enger*, 812 F.3d at 568. They have done just that. Plaintiffs have shown that the Supervisors were entitled to Rank Credit for working Case-Related Programs under each of the Supervisors' CBAs. The evidence demonstrates that the Supervisors have not been paid the Rank Credit owed to them. Accordingly, Plaintiffs are entitled to summary judgment in their favor on the IWPCA claim.

## II. City's Liability Under the FLSA and IMWL

"Courts have generally held that the IMWL parallels the FLSA, and the Illinois Administrative Code provides that FLSA regulations provide guidance in interpreting the IMWL. Thus, the same analysis generally applies to both the FLSA and IMWL." *Pizano v. Big Top & Party Rentals, LLC*, 2017 WL 1344526, at *1 n.1 (N.D. Ill. 2017) (quoting *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004)). Accordingly, the Court will analyze the FLSA and IMWL claims together.

The FLSA generally requires that employers pay overtime to certain employees who work more than 40 hours in a work week. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173 (7th Cir. 2011). For police officers, the FLSA does not require overtime payments until an officer works in excess of 171 hours in a designated 28-day period. 28 U.S.C. § 207(k). If an officer works for more than 171 hours in the 28-day period, he or she must be paid not less than 1.5 times the "regular rate" of pay. *Id.* "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

The City argues that its liability under the FLSA and IMWL are limited as a matter of law. First, the City offers a formula to include DAP and Supervisor's Quarterly pay into the calculation of the regular rate. Second, the City argues that it is

12

entitled to apply credits from CBA overtime premium payments to offset any FLSA overtime liability under their formula. We address each argument in turn.

### a. City's Formula for DAP and Supervisor's Quarterly Pay

The City offers a formula for adding DAP and Supervisor's Quarterly pay, which it concedes should be included, into the regular rate. The City argues that DAP and Supervisor's Quarterly Pay should first be divided by all hours worked. Then, the City argues, this amount must be multiplied by one-half. That amount is then multiplied by the number of hours worked exceeding 171 hours. The result is the City's FLSA overtime liability. We disagree with this formula.

The City's formula relies on Section 778.209 of the Code of Federal Regulations. 29 C.F.R. 778.209. We are not convinced that this regulation applies here. The regulation seeks to incorporate bonuses into the regular rate when the bonus does not clearly apply to a particular work period and the amount of the bonus cannot be ascertained when overtime is calculated and paid. 29 C.F.R. 778.209. When the amount of the bonus can be ascertained, the regulation provides a formula for incorporating the bonus into the regular rate. *Id.* DAP and Supervisor's Quarterly, however, could be ascertained at the time overtime was calculated and paid. The rates of DAP and Supervisor's Quarterly had a definite set amount in the CBAs. The same amount was paid, regardless of the quantity or quality of work. Using their formula, the City would appear to benefit by ignoring these definite amounts at the time overtime

13

was calculated and adding them in at a lower rate years later. Accordingly, we reject the City's reliance on this regulation and the resulting formula.

### b. Plaintiffs' Formula

Plaintiffs argue that the City's current method of calculating the regular rate (i.e. the method the City adopted after the commencement of this litigation) should be used. We agree.

To calculate the FLSA regular rate, we must divide the total remuneration paid to the officers by the number of hours worked. 29 C.F.R. § 778.109. The record reflects that the officers and supervisors were to receive a regular wage, payment for Case-Related Programs, Out-of-Grade Pay, and DAP, Rank Credit, and Supervisor's Quarterly, as applicable, under their respective CBAs. Each of these is unquestionably remuneration for employment and must be included in the numerator. This amount must then be divided by the total number of hours worked. Thus, the formula for an Officer, for example, would look like:

$$\frac{(\text{Monthly Salary} \times 12) + (\text{DAP} \times 4) + (\text{Out of Grade pay}) + (\text{Program Pay})}{\text{Hours Worked}}$$

The result is the regular rate. This amount is multiplied by 1.5 to calculate overtime pay. The City's liability comes from the difference between what it should have paid and what it did pay. Accordingly, Plaintiffs are entitled to summary judgment in their favor on their FLSA and IMWL claims.

### c. CBA Overtime Credits

Having determined how to calculate the regular rate, we move to any credits against liability the City may be entitled to under the FLSA. The City argues that it is entitled to credits against any FLSA liability for premium payments made to officers for working Case-Related Programs. Specifically, the City says it is entitled to credits under Section 207(e)(5) and (6). We disagree.

Section 207(h)(2) of the FLSA provides that compensation paid under Section 207(e)(5), (6), and (7) are creditable toward overtime payment liability. The City argues that they are entitled to credits under Section 207(e)(5) and (6). Those credits are for:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;
>
> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days.

29 U.S.C. § 207(e)(5), (6).

To qualify as a premium rate under Section 207(e)(5), "the overtime rate must be greater than the regular rate, either a fixed amount per hour or a multiple of the nonovertime rate, such as one and one-third, one and one-half or two times that rate."

15

29 C.F.R. § 778.308(b). The record shows that the officers were paid a "premium rate" under Section 207(e)(5) because they were paid an amount in excess of the regular rate. However, we do not believe that the City is otherwise entitled to the credit. In order to receive credits under Section 207(e)(5), officers "must be paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum required in a workweek." *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 979 (8th Cir. 2006) (cleaned up). Officers and Supervisors were paid the premium rate regardless of the number of hours worked. In other words, the rate paid for working Case-Related programs were set independent of the total number of hours the officers worked and were not paid for working over a certain number of hours in a day or pay period, as required by the regulation. Accordingly, the City is not entitled to credits under Section 207(e)(5).

The premium payment under Section 207(e)(6) must be at least one-and-one-half times the regular rate. 29 C.F.R. 778.203. The record shows that the officers were paid one-and-one-half times their salary, not their regular rate. Including DAP and Rank Credit, for example, into the regular rate brings the amount paid under one-and-one-half times the regular rate. Accordingly, the City is not entitled to credits under Section 207(e)(6).

## II. Park District Program

The City argues that wages paid for working the CPD's program to provide policing to the Chicago Park District ("Park District") should be exempt from the FLSA

16

regular rate under Section 207(p). *See* 29 U.S.C. § 207(p). Plaintiffs argue that the City has failed to prove that the Park District and the City are separate and independent. We agree with Plaintiffs.

The employer bears the burden of proving that an exemption applies. *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F.3d 279, 283 (7th Cir. 1993) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)). The Section 207(p) exemption applies when (1) the work is performed solely at the employees' option and (2) the two employers are in fact separate and independent. The factors considered for determining whether the employers are separate and independent are:

> "(1) whether the agencies maintained separate payrolls; (2) whether the entities had arms-length dealings regarding employment; (3) whether the agencies have separate budgets; (4) whether the employees of the entities participate in separate retirement systems; (5) whether they are independent entities under state statute; and (6) whether they can both sue and be sued." *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 337 (N.D. Ill. 2000).

The City relies on *Nolan* to support its contention that the Park District is separate and independent. The Court in *Nolan* concluded that the Chicago Transit Authority and Chicago Housing Authority were separate and independent from the City based on six factors. *Id.* Both agencies were individually created by Illinois statute, had separate retirement systems, payrolls, and budgets from the City, and could individually sue and be sued. *Id.* at 334. The City in *Nolan* offered evidence showing that the agencies were financially independent. For example, the City provided an affidavit from the Chief Financial Officer and Treasurer of the CTA. *Id.* The affidavit included the CTA's

17

budget for the year, which showed that less than one half of one percent of the CTA's budget was from the City. *Id.* at 334–35. Thus, the *Nolan* Court found that the CTA was separate and independent from the City. *Id.* at 337.

Here, the City has not provided sufficient evidence to show that the Park District is financially independent from the City. The Park District is created by an Illinois statute and can sue and be sued. However, while Illinois statute allows for the Park District to receive revenue from property taxes, park fees, federal funds, and grants, there is no evidence in the record that the City and Park District have separate budgets, retirement systems, or payrolls. Therefore, the City has not met its burden of proving that the Section 207(p) exemption applies. Accordingly, compensation paid for working the Parks Program must be included in the regular rate calculation.

## III. Injunctive Relief

The City argues that injunctive relief is not available for Plaintiff's claims under the FLSA, IWPCA, and IMWL. Although Plaintiffs concede that only the Secretary of Labor may seek injunctive relief under the FLSA, *Heitmann v. City of Chicago*, 560 F.3d 642, 644 (7th Cir. 2009) (citing 29 U.S.C. § 211(a)), Plaintiffs argue that injunctive relief is available under the IWPCA and IMWL. We agree that injunctive relief appears to be available under both statutes. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, *6 n.7 (N.D. Ill. 2000) ("Plaintiff does note that injunctive relief is possible under the IMWL . . . Presumably, any injunctive relief would rest on a finding of unlawful failure to pay one or more types of wages sought and would require merely

18

future obedience to the law in those respects."). However, as the parties have only moved for partial summary judgment as to liability, and not damages or other relief, the Court does not address whether Plaintiffs are entitled to the injunctive relief they seek.

## V. Statute of Limitations

The City argues that Plaintiffs' claims for retroactive wage increases going back to 2012 are partially time-barred by the statute of limitations. Plaintiffs argue their claim didn't accrue until January 2015. We agree with Plaintiffs.

The statute of limitations for an FLSA claim is two years from the accrual of the cause of action. 29 U.S.C. § 255(a); *Young Chul Kim v. Capital Dental Tech. Lab., Inc.*, 279 F. Supp. 3d 765, 769 (N.D. Ill. 2017). For willful violations of the FLSA, the statute of limitations extends to three years. 29 U.S.C. § 255(a); *Kim*, 279 F. Supp. 3d at 769. Ordinarily, "a cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. 790.21. However, "In some instances an employee may receive, as a part of his compensation, extra payments under incentive or bonus plans, based on factors which do not permit computation and payment of the sums due for a particular workweek or pay period until some time after the pay day for that period. In such cases it would seem that an employee's cause of action, insofar as it may be based on such payments, would not accrue until the time when such payment should be made." 29 C.F.R. § 790.2 n.132.

19

The retroactive increases for July 2012 to June 2013 were not paid until January 2015. As such, Plaintiffs could not know that those payments were insufficient until the payments were actually made. In other words, Plaintiffs could not have brought their case until the payments were made. Plaintiffs included these claims in their November 2016 amended complaint, before the two-year statute of limitations. Accordingly, Plaintiffs retroactive wage increase claims under the FLSA are not time barred and must be included in the regular rate.

## CONCLUSION

For the reasons mentioned above, the Court grants the Plaintiffs' motion for partial summary judgment (Dkt. # 258). The City's cross-motion for summary judgment is denied (Dkt. #250). The City's Motion to Amend/Correct Certain Assertions Made by Plaintiffs in Their Summary Judgment Response is denied as moot (Dkt. # 287). Status is set for 12/10/2020 at 10:40 a.m. It is so ordered.

Dated: 11/5/2020

_____
Charles P. Kocoras
United States District Judge