**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM C. DOUGHERTY and ANARGYROS KEREAKES, individually and on behalf of other similarly situated members of the Chicago Police Department, </br></br>      Plaintiffs, </br></br> v. </br></br> CITY OF CHICAGO, an Illinois Municipal Corporation, </br></br>      Defendant. | No. 15 CV 10975 </br></br> Judge Charles P. Kocoras </br></br> Magistrate Judge Beth W. Jantz |

**DEFENDANT CITY OF CHICAGO'S MOTION TO COMPEL**

Defendant, City of Chicago ("City"), respectfully requests that the Court enter an order compelling Plaintiffs to submit amended, complete and full responses to the following discovery requests of the City – Interrogatory Nos. 3, 4, 5 and 6, Document Request Nos. 5, 6, and 11, and Request To Admit Nos. 21 and 23. In support of this Motion, the City states the following:

**I. FACTUAL BACKGROUND[1]**

1. On October 24, 2022, the City propounded to Plaintiffs a Third Set of Interrogatories ("Interrogatories"), Second Request For The Production of Documents ("Document Requests"), and First Requests For Admissions ("RTAs"). Plaintiffs' responses to the Interrogatories are attached as **Exhibit A**, their responses to the Document Requests are attached as **Exhibit B**, and their responses to the RTAs are attached as **Exhibit C**.

2. On January 31, 2023, counsel for the Parties held a Rule 37 conference via telephone. On January 30, 2023, in preparation for the Rule 37 conference that took place the

---

[1] In Section I, the City addresses the factual background relevant to this Motion. In Section III, the City addresses the discovery requests at issue in further detail.

following day, counsel for the City sent an e-mail to Plaintiffs' counsel which identified deficiencies in Plaintiffs' discovery responses. **Exhibit D**, attached hereto, a copy of the January 30, 2023 e-mail. The City's January 30 e-mail covered all the Plaintiffs' discovery responses that are addressed in the instant Motion to Compel.

3. In the Parties' January 31, 2023 Rule 37 conference, they addressed, among other topics, the issues identified by the City in its January 30 e-mail. However, in the January 31 Rule 37 conference, for all the issues identified by the City, Plaintiffs rejected the City's positions and refused to amend or supplement their responses, with one exception. Plaintiffs agreed to supplement their responses to RTA Nos. 21 and 23, which they did on February 8, 2023. (**Exhibit E**, attached hereto).[2]

4. Despite Plaintiffs' refusal to reach any meaningful compromise at the January 31, 2023 Rule 37 conference, the City was hopeful that Plaintiffs would reconsider their positions and take at least some of the actions requested by the City. To that end, on February 8, 2023, the City requested that an additional meet and confer take place and asked Plaintiffs if they were standing firm on the issues the City raised with regard to Plaintiffs' discovery responses. (**Exhibit F**, attached hereto). Plaintiffs' counsel responded, "February 15 works best for us for a meet-and-confer. We'd suggest 1:00 p.m. CST. As to your 'standing firm' question, if we are to have another meet-and-confer, we should discuss then any remaining issues the City has with Plaintiffs' discovery responses." (**Exhibit F**). Ultimately, Plaintiffs' counsel did not make themselves available to have a Rule 37 conference on February 15, 2023, but counsel for the Parties had their most recent "meet and confer" on March 3, 2023.

---

[2] As addressed below in Section III.E, while Plaintiffs supplemented their responses to RTA Nos. 21 and 23, those responses remain deficient.

5.      The March 3, 2023 Rule 37 conference began with the City identifying multiple modified discovery requests of Plaintiffs to which the City agreed to provide amended or supplemental responses. After the Parties finished their discussion of the issues Plaintiffs have with the City's discovery responses, they turned to the concerns the City has with Plaintiffs' discovery responses. However, Plaintiffs remained steadfast in their refusal to amend or supplement their responses to the discovery requests addressed by the City, despite the City's modifications to certain requests.

**II.     THE CITY HAS COMPLIED WITH L.R. 37.2 AND THIS COURT'S STANDING ORDER ON DISCOVERY MOTIONS AND MOTIONS TO COMPEL**

6.      The undersigned attorney for the City represents that, prior to filing this Motion, after consultation with Plaintiffs and the City's good faith attempts to resolve differences, the Parties were unable to reach an accord. The City complied with Northern District of Illinois Local Rule 37.2 by sending an email to Plaintiffs' counsel on January 30, 2023 that identified the deficiencies in Plaintiffs' discovery responses and by having two Rule 37 conferences with Plaintiffs' counsel to further address the issues raised by the City, one on January 31, 2023 via telephone and the second on March 3, 2023 via a Teams audio conference. Additionally, the Parties exchanged a series of e-mails, and the City provided to Plaintiffs individual Time and Attendance Cards and other information relating to RTA Nos. 21 and 23. That correspondence took place on December 2 and 5, 2022 and January 3, 2023.

**III.    ARGUMENT**

7.      This Court's Standing Order on Discovery Motions and Motions to Compel states that "[a] meet and confer is not in good faith if a party merely sticks to its original position or refuses to consider a compromise or narrowed approach." (Standing Order, p. 1). As explained below, Plaintiffs violated the Court's Standing Order and did not act in good faith by refusing to

3

agree to the City's reasonable requests for them to amend and/or supplement the discovery responses at issue.

### A. Interrogatory Nos. 3 and 4

8. Two of the primary focuses of discovery during this damages phase of the lawsuit are the issues of good faith and willfulness, both of which can have a significant impact on the City's overall potential liability. In Interrogatory Nos. 3 and 4, the City focuses on some of the most crucial issues of the lawsuit, addressing them in the context of the willfulness issue in Interrogatory No. 3 and the good faith issue in Interrogatory No. 4. (**Exhibit A**).

9. To make Interrogatory Nos. 3 and 4 as straightforward as possible, the City broke them down into three distinct subsections. Subsection (a) addresses the primary issue in the lawsuit, which is the CPD, prior to February 2016, not aggregating all hours worked by Plaintiffs for purposes of determining the number of FLSA overtime hours worked in a police cycle when Plaintiffs worked in the Special Employment Voluntary Overtime Programs. Subsection (b) addresses the City's ability to apply 29 U.S.C. § 207(e)(6) to exclude premium overtime compensation paid to officers who participated in Special Employment Voluntary Overtime Programs from the regular rate calculation and then to use such amounts as credits against any potential FLSA liability. Subsection (c) addresses the City's application of the FLSA exemption under 29 U.S.C. § 207(p) to overtime hours worked in the Chicago Parks overtime program.

10. In their responses to Interrogatory Nos. 3 and 4, Plaintiffs responded to subsection (a), but not subsections (b) and (c). Further, Plaintiffs incorrectly objected that the language in Interrogatory Nos. 3 and 4 is vague. (**Exhibit A**). The language in subsections (b) and (c) of Interrogatory Nos. 3 and 4 is not vague. These subsections address key legal positions the City has been advancing in this case for years, and Plaintiffs are well aware of what information the City is requesting in Interrogatory Nos. 3 and 4, including subsections (b) and (c). Therefore,

4

Plaintiffs' objection on the grounds of the interrogatories being vague is improper and, in any event, they must fully respond to these interrogatories notwithstanding that objection.

11. Moreover, the City attempted to work in good faith with Plaintiffs to alleviate the only other objection they had to Interrogatory Nos. 3 and 4. For each of these interrogatories, Plaintiffs objected on that basis that subsections "(b) and (c) do not set forth plaintiffs' *claims* as stated in the opening paragraph of the interrogatory…" (**Exhibit A**) (emphasis added). Plaintiffs must respond to discovery requests relating to the City's defenses, not only discovery requests relating to their claims in this lawsuit. Therefore, this objection by Plaintiffs is also improper. Nevertheless, in its January 30, 2023 e-mail and at the January 31, 2023 Rule 37 conference, the City agreed to remove the word "claim" from Interrogatory Nos. 3 and 4.

12. Despite this concession by the City, Plaintiffs still refused to amend or supplement their responses to Interrogatory Nos. 3 and 4. Plaintiffs have failed to provide *any* responses to subsections (b) and (c) of Interrogatory Nos. 3 and 4. These interrogatories address primary issues of this lawsuit as they relate to the significant issues of good faith and willfulness. Plaintiffs' objections to Interrogatory Nos. 3 and 4 are improper, and their refusal to respond to subsections (b) and (c) is not in good faith and violates this Court's Standing Order on Discovery Motions and Motions to Compel.

13. Plaintiffs should be compelled to provide complete and full answers to Interrogatory Nos. 3 and 4, including subsections (b) and (c).

**B.** **Document Request Nos. 5 and 6**

14. The City's Document Request No. 5 is the same as its Interrogatory No. 3 (willfulness), and its Document Request No. 6 is the same as its Interrogatory No. 4 (good faith). Plaintiffs' objections and response to Document Request No. 5 mirror their response to

5

Interrogatory No. 3, and their objections and response to Document Request No. 6 are the same as their response to Interrogatory No. 4.

15. Plaintiffs have not provided *any* responses to subsections (b) and (c) of Document Request Nos. 5 and 6, and have not produced any documents responsive to these requests.

16. Furthermore, just as it did for Interrogatory Nos. 3 and 4, the City agreed to remove the word "claim" from Document Request Nos. 5 and 6 in a good faith attempt to alleviate Plaintiffs' objection to the City's inclusion of that word. Even though the City made this concession, Plaintiffs still refuse to provide any responses to subsections (b) and (c) of Document Request Nos. 5 and 6, or produce any documents responsive to those subsections.

17. For these reasons, the City asserts the same arguments for Plaintiffs' responses to Document Request Nos. 5 and 6 that it does for Interrogatory Nos. 3 and 4. *See* Paragraphs 8-13 above. The City therefore requests that the Court order Plaintiffs to provide complete and full responses to Document Request Nos. 5 and 6, including subsections (b) and (c) of the same, and produce documents responsive to these requests.

    **C.**    **Interrogatory Nos. 5 and 6**

18. In Interrogatory Nos. 5 and 6, the City requests that Plaintiffs provide individual damages calculations for a specific Police Officer (No. 5) and a specific Sergeant (No. 6). The City identified a police officer and Sergeant because the damages for Supervisors (Sergeants and Lieutenants) will be calculated somewhat differently than damages for Police Officers (based on certain additional forms of compensation the Supervisors receive).

19. As a result of the District Court's summary judgment rulings, the City's potential liability in this matter is significant. The damages calculations that are to be performed will of course directly impact the amount of the City's liability. One of the purposes of Interrogatory

6

Nos. 5 and 6 is for Plaintiffs to provide their position on how damages calculations are to be performed.

20. It is undisputed that Interrogatory Nos. 5 and 6 are legitimate as drafted. Plaintiffs make no objections to these two interrogatories. Nor have they raised any issues regarding having the underlying information for these two potential class members to provide their calculation of damages. However, Plaintiffs have failed to provide any substantive response to Interrogatory Nos. 5 and 6, answering, "Plaintiffs have not yet calculated individual damages for [Officer Larys/Sgt. Gartner]. When individual damages are calculated for [Officer Larys/Sgt. Gartner], they will be tendered to the City of Chicago." (**Exhibit A**).

21. At the Parties' recent Rule 37 conferences, Plaintiffs have made clear that they do not intend to provide responses to Interrogatory Nos. 5 and 6 at this time or any other time in the relatively near future. At the March 3, 2023 meet and confer, the City again followed up on this issue, pointing out that the City propounded Interrogatory Nos. 5 and 6 over four months ago and Plaintiffs retained their damages expert in the first half of 2022. The City again asked Plaintiffs when they would respond to these two interrogatories and provide the requested damages calculations. Plaintiffs did not identify a date certain or even a general time period when they would do so.

22. The damages calculations requested to be performed in Interrogatory Nos. 5 and 6 are extremely important and highly relevant. Plaintiffs do not lodge any objections to these interrogatories or make any claim that it is not possible for their expert to perform the damages calculations at this time. Indeed, the City previously offered to Plaintiffs that if they believed they are missing information to provide a response to Interrogatory Nos. 5 and 6, they should

describe exactly what information they are missing that prevents them from performing the requested damage calculations. (**Exhibit D**). Plaintiffs did not identify any such information.

23. Plaintiffs should be ordered to perform the damages calculations requested in Interrogatory Nos. 5 and 6 in whatever timeframe in the near future the Court deems reasonable. The City respectfully submits that April 14, 2023 would be a reasonable deadline.

### D. Document Request No. 11

24. In Document Request No. 11, the City requests that Plaintiffs produce "[a]ll documents that Plaintiffs intend to or will rely on to support any challenge to the City's manually maintained and/or electronic timekeeping records." (**Exhibit B**). Plaintiffs responded to this request as follows: "Objection. This interrogatory is broad, vague, and does not explain or define what 'challenge' means in the scope of this litigation. Without waiving said objection, please see all the City's manually maintained and/or electronic timekeeping records produced by Defendant to Plaintiffs in this litigation." (**Exhibit B**).

25. The City made a reasonable, straightforward request to Plaintiffs, asking them to specifically identify, by Bates number, the documents they reference in their response to Document Request No. 11. As part of the many Rule 37 issues the Parties have addressed over the past few months, Plaintiffs requested that the City supplement certain of its responses to Plaintiffs' document requests and interrogatories by specifically identifying, by Bates number, documents the City referenced in its responses, and also identifying deposition testimony and relevant portions of the City's summary judgment submissions. The City agreed to supplement its written responses to Plaintiffs' document requests and interrogatories in that manner, which the City did. Plaintiffs too should agree to this simple, reasonable request and specifically identify, by Bates number, the documents they reference in their response to Document Request No. 11.

E.    **Plaintiffs' Supplemental Responses To RTA Nos. 21 and 23**

26.    RTA Nos. 21 and 23 relate to Plaintiffs' claim for Rank Credit brought pursuant to the Illinois Wage Payment and Collection Act. For that claim, Plaintiffs seek .75 hours of compensatory time for each day on which they worked in one of the Special Employment Voluntary Overtime Programs.

27.    Plaintiffs acknowledge that for any day on which they already received Rank Credit, they do not seek a second entry of Rank Credit (.75 additional hours of compensatory time) as damages in this lawsuit. However, Plaintiffs take the position that, with very few exceptions related mostly to the CPD's Traffic Unit, if a Supervisor participated in one of the Special Employment Voluntary Overtime Programs and performed no other work for the CPD that day, they did not receive Rank Credit.

28.    The City acknowledges that in many instances when Supervisors participated in one of the Special Employment Voluntary Overtime Programs and performed no other work for the CPD that day, they did not receive Rank Credit. However, the only way for the Parties to gain further clarity on this issue is to review all the Supervisors' Time and Attendance Cards and determine if the Supervisor did or did not receive Rank Credit for the days at issue. The Parties extensively briefed this issue late in 2022. (Dkt. Nos. 352 and 356).

29.    RTA Nos. 21 and 23 are extremely relevant and important because they challenge Plaintiffs' position that, after February 8, 2010, Supervisors never (except for Traffic Programs) received Rank Credit on days when they participated in one of the Special Employment Voluntary Overtime Programs and performed no other work for the CPD.

30.    RTA No. 21 requests that Plaintiffs admit that "there are occasions where Special Employment Voluntary Overtime Programs were recorded on the Time and Attendance Cards prior to February 2016." (**Exhibit C**). Plaintiffs initially denied this request.

9

31. RTA No. 23 requests that Plaintiffs admit that "[t]here are occasions when a sworn member received Rank Credit on days that they also worked a Special Employment Voluntary Overtime Program." Plaintiffs responded as follows:

> "Admitted, but this admission is limited to an unknown number of occasions in the Traffic Unit and is based on deposition testimony given by Traffic Unit supervisors as plaintiffs have not yet received Traffic program records from the City. Plaintiffs additionally admit that that are occasions where sworn members received rank credit on days when program work is also performed, but only when the program worked is less than a tour of duty; i.e., 4 or 5 hours and a regularly scheduled tour was worked on the same day. Outside of the Traffic Unit, plaintiffs are unaware of rank credit being issued for any eight-hour program such as VRI."

(**Exhibit C**).

32. In their responses to RTA Nos. 21 and 23, Plaintiffs continue to take the position that if Supervisors participated in one of the Special Employment Voluntary Overtime Programs and performed no other work for the CPD that day, they did not receive Rank Credit. The City further investigated this issue, reviewed records showing the days on which individual Supervisors participated in one of the at-issue programs, and reviewed those Supervisors' Time and Attendance Cards to see if they received Rank Credit for any of those days.

33. The City learned that there *were* instances when Supervisors worked in one of the programs (VRI, for example), performed no other work for the CPD that day, and received Rank Credit. These instances include situations where the Supervisor did not work in the CPD's Traffic Unit and the day in question was subsequent to 2010. In other words, Rank Credit was provided to Supervisors in scenarios other than the limited scenarios in which Plaintiffs admit Rank Credit was provided. Again, this is a significant issue because, in the examples found by the City, the Supervisor already received Rank Credit and would not be entitled to a second entry of Rank Credit (for each day in question) as part of this lawsuit.

34. On December 2 and 5, 2022, the City provided its findings to Plaintiffs, sending them an Excel sheet addressing the examples the City found where, among other scenarios, Supervisors participated in one of the programs, performed no other work for the CPD that day, and received Rank Credit. The City also provided the applicable Time and Attendance Cards (if Plaintiffs did not already have those Cards). (*See* **Exhibit G**, attached hereto, a copy of the Excel sheet). Plaintiffs had already been provided with records identifying the days on which individual Supervisors worked in the Special Employment Voluntary Overtime Programs.

35. One of the examples the City provided to Plaintiffs is October 4, 2014, which was a regular day off for Supervisor Dwayne Johnson, meaning he was not assigned to work in his primary CPD assignment that day. On October 4, 2014, Johnson worked in VRI and received Rank Credit even though he performed no other work for the CPD that day. (**Exhibit G**, Row 10). According to Plaintiffs' theory, Johnson would not have received Rank Credit, but he did.

36. After receiving the examples and other information from the City, Plaintiffs provided supplemental responses to RTA Nos. 21 and 23. (**Exhibit E**). In their supplemental response to RTA No. 21, Plaintiffs admitted the request for the time period prior to February 8, 2010 and denied the request for the time period of February 8, 2010 to January 31, 2016. (Plaintiffs' full supplemental response is included in **Exhibit E**).

37. Plaintiffs' supplemental response to RTA No. 23 is as follows:

"Outside of the Traffic Unit, Plaintiffs are unaware of rank credit being issued for Program work for the period after February 8, 2010. While there are days where supervisors outside of the Traffic Unit have worked program work and non-program work on the same date, we have not been provided with any evidence that the rank credit was issued for the program work as opposed to the non-program work. With regard to the dates prior to February 8, 2010, please see Plaintiffs' Supplemental Response to RTA #21."

(**Exhibit E**).

38. Therefore, Plaintiffs fail to admit that in any of the examples provided by the City for the time period of February 8, 2010 to January 31, 2016, a Supervisor participated in one of the Special Employment Voluntary Overtime Programs, performed no other work for the CPD that day, and received Rank Credit.

39. Plaintiffs refuse to make any such admissions because, they claim, in the examples provided by the City, the number of hours identified as worked in the Special Employment Voluntary Overtime Program records does not match up equally to the number of hours the Time and Attendance Cards show as being worked for those days. Because of this discrepancy, Plaintiffs claim, on the days in question the Supervisors must have worked in their CPD district on their regular day off, not in the Special Employment Voluntary Overtime Programs. Plaintiffs' position lacks any merit, because the records produced by the City make clear that in these examples, the Supervisors *did* participate in one of the Special Employment Voluntary Overtime Programs. Plaintiffs have no legitimate basis for concluding that the Supervisors worked in their district on the days in question, especially because the records provided by the City show that the Supervisors worked in one of the programs, not in their district.

40. In sum, the information the City provided to Plaintiffs as part of the Rule 37 process conclusively shows that in some of the examples, on the day in question, the Supervisors worked in one of the Special Employment Voluntary Overtime Programs, performed no other work that day for the CPD, and received Rank Credit. Consequently, with regard to RTA No. 21, there *are* occasions where Special Employment Voluntary Overtime Programs were recorded on the Time and Attendance Cards prior to February 2016. And, as for RTA No. 23, there *are*

12

occasions when a sworn member received Rank Credit on days that they also worked a Special Employment Voluntary Overtime Program.

41. Plaintiffs' refusal to make the admissions requested in RTA Nos. 21 and 23 is improper, especially in light of the detailed information provided by the City after Plaintiffs' initially denied these two requests. Accordingly, the City requests that the Court compel Plaintiffs to amend their response to RTA No. 21 and admit that there are occasions where Special Employment Voluntary Overtime Programs were recorded on the Time and Attendance Cards prior to February 2016.

42. The City further requests that the Court compel Plaintiffs to amend their response to RTA No. 23 and admit that there are occasions when a sworn member, prior to February 2016, received Rank Credit on a day that they worked in a Special Employment Voluntary Overtime Program and performed no other work for the CPD.

WHEREFORE, for the above-stated reasons, the City respectfully requests that the Court: (1) order Plaintiffs to provide complete and full answers to Interrogatory Nos. 3 and 4 and Document Request Nos. 5 and 6, including subsections (b) and (c) of the same, and to produce documents responsive to these requests; (2) compel Plaintiffs to perform the damages calculations requested in Interrogatory Nos. 5 and 6 by April 14, 2023 or any other date the Court deems reasonable; (3) order Plaintiffs to supplement their response to Document Request No. 11; (4) compel Plaintiffs to amend their responses to RTA Nos. 21 and 23 in the manner requested by the City in Section III.E above; and (5) grant any such other relief as it deems just and fair.

Date: March 7, 2023　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　CITY OF CHICAGO

BY: /s/ Matthew P. Kellam

Jennifer A. Naber
jnaber@lanermuchin.com
Matthew P. Kellam
mkellam@lanermuchin.com
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800

**CERTIFICATE OF SERVICE**

Matthew P. Kellam, an attorney, hereby certifies that he caused the foregoing **Defendant City of Chicago's Motion To Compel** in the above-captioned matter to be served on the parties of record listed below, via the Court's ECF filing system, on this 7th day of March, 2023, addressed to:

>Paul D. Geiger
>Ronald C. Dahms
>540 W. Frontage Road, Suite 3020
>Northfield, IL 60093
>pauldgeiger@gmail.com
>rdahmslaw@gmail.com
>
>William B. Aitchison
>Public Safety Labor Group
>3021 NE Broadway
>Portland, OR 97232
>(503) 282-6160
>will@pslglawyers.com
>
>Paul DeCamp
>Epstein, Becker & Green, P.C.
>1227 25th Street, N.W., Suite 700
>Washington, D.C. 20037

>/s/Matthew P. Kellam
>Matthew P. Kellam