# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM C. DOUGHERTY and ANARGYROS KEREAKES, individually and on behalf of other similarly situated members of the Chicago Police Department, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 15 CV 10975 |
| vs. | ) ) | Judge Charles P. Kocoras |
| CITY OF CHICAGO, an Illinois Municipal Corporation, | ) ) ) ) | Magistrate Judge Mary M. Rowland |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSES TO THE
CITY'S SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS**

Plaintiff, William Dougherty, individually and on behalf of other similarly situated employees of the Chicago Police Department, by and through his attorneys, the Law Offices of Paul D. Geiger and William Aitchison, pursuant to Rule 34 of the Federal Rules of Civil Procedure, responds to the following document requests as follows:

**RESPONSES REQUESTS FOR DOCUMENTS**

**REQUEST NO. 1:**

All documents the identification of which is requested in Defendant City of Chicago's Third Set of Interrogatories to Plaintiffs, which were served on October 24, 2022.

**RESPONSE:**

Please see the documents identified in the below Responses to Requests #s 3 through 11.

**REQUEST NO. 2:**

All documents which Plaintiffs referred to and/or relied on in responding to, or which relate to, Defendant City of Chicago's Third Set of Interrogatories to Plaintiffs, which were served on October 24, 2022.

**RESPONSE:**

Please see the documents identified in the below Responses to Requests #s 3 through 11.

**REQUEST NO. 3:**

If Plaintiffs deny any of the requests in Defendant City of Chicago's First Requests For Admissions, which were served on October 24, 2022, or any portion of any such Requests For Admissions, produce all documents supporting such denials.

**RESPONSE:**

For Denials to Requests #s 1-3: Please see Sections 20.1-20.2 of the Police Officers' Sergeants', and Lieutenants' CBAs ("CBAs"); and Sections 11.1 and 11.2 of the CBAs, all of which were produced by the City.

For Denial to Request # 8: Please see records produced by the City that indicate that Gartner worked "VRI – Supervisor Supplemental" on March 20, 2017.

For Denials to Request #s 12 & 14: Please see records produced by the City that indicate Koplitz did not work the Students First Safety Project on May 30, 2008.

For Denial to Request # 15: Please see the 2008 T/A Card for Donald Koplitz (City14607) produced by the City which indicates that Koplitz worked other overtime on May 30, 2008, for which he was paid rank credit.

For Denial to Request # 17: Please see records produced by the City that indicate that Koplitz worked a program known as "Transit Surge Initiative Team 4 hours" January 20, 2011.

For Denial to Request # 20: Please see the 2014 T/A Card for Alejandro Silva (City14760) produced by the City which indicates that Silva worked other overtime on February 15, 2014, for which he was paid rank credit.

**REQUEST NO. 4:**

All documents which Plaintiffs referred to and/or relied on in responding to, or which relate to, Defendant City of Chicago's First Requests For Admissions, which were served on October 24, 2022.

2

**RESPONSE:** Please see Plaintiffs' Response to Request # 3.

**REQUEST NO. 5:**

All documents that support Plaintiffs' allegations that Defendant City of Chicago's actions constituted willful conduct pursuant to 29 U.S.C. § 255(a), relating to Plaintiffs' following claims:

a. The City not aggregating all actual hours worked for purposes of determining the number of FLSA overtime hours worked in a police cycle, specifically relating to work performed in the Special Employment Voluntary Overtime Programs, until the changes in 2016 were implemented to record time worked for a particular Special Employment Voluntary Overtime Program on the Time and Attendance Cards;

b. The City's application of 29 U.S.C. §§ 207(e) to the overtime premium compensation paid to officers who worked in the Special Employment Voluntary Overtime Programs when calculating the FLSA overtime rate for hours worked over 171 hours in a police period; and

c. The City's application of the FLSA exemption under 29 U.S.C. § 207(p) to the Chicago Parks Overtime Program hours.

For purposes of this request, "willful" means the City "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the" FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also* 29 U.S.C. § 255(a).

**RESPONSE:**

Regarding subsections (a) and (b), the plaintiffs object. The aforementioned subparagraphs both refer to "Special Employment Voluntary Overtime Program" work. Documents produced in this lawsuit by the City of Chicago and its Department of Police do not include reference to any case-related programs as a Special Employment Voluntary Overtime Programs. In addition, subparagraphs (b) and (c) do not describe Plaintiffs' claims as stated in the opening paragraph of the interrogatory but rather refer to City defenses. Without waiving said objections, see Plaintiffs' response to subsection (a) below:

a. Pease see the Facsimile from Frank Wilson, dated February 08, 2010 (City5331) and City Notice dated January 26, 2016 (City0026).

With respect to the subjects of good faith and willfulness, the parties have yet to complete discovery on those issues. The City objected to Plaintiffs engaging in discovery on those issues in the liability phase of the case (including instructing witnesses not to answer those questions). As such, Plaintiffs will supplement their responses as documents are produced during damages discovery.

3

**REQUEST NO. 6:**

All documents that support Plaintiffs' allegations that the City's actions did (or do) not constitute acting in good faith pursuant to 29 U.S.C. § 259 and/or § 260, relating to Plaintiffs' following claims:

a. the City not aggregating all actual hours worked for purposes of determining the number of FLSA overtime hours worked in a police cycle, specifically relating to work performed in the Special Employment Voluntary Overtime Programs, until the changes in 2016 were implemented to record time worked for a particular Special Employment Voluntary Overtime Program on the Time and Attendance Cards;

b. The City's application of 29 U.S.C. §§ 207(e) to the overtime premium compensation paid to officers who worked in the Special Employment Voluntary Overtime Programs when calculating the FLSA overtime rate for hours worked over 171 hours in a police period; and

c. The City's application of the FLSA exemption under 29 U.S.C. § 207(p) to the Chicago Parks Overtime Program hours.

For purposes of this request, "good faith" means the City "acted in good faith with reasonable grounds to believe that its actions did not violate the FLSA," and/or the City's "act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged." *See* 29 U.S.C. §§ 259 and 260; *Bankston v. Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995).

**RESPONSE:**

Regarding subsections (a) and (b), the plaintiffs object. The aforementioned subparagraphs both refer to "Special Employment Voluntary Overtime Program" work. Documents produced in this lawsuit by the City of Chicago and its Department of Police do not include reference to any case-related programs as a Special Employment Voluntary Overtime Programs. In addition, subparagraphs (b) and (c) do not set forth plaintiffs' claims as stated in the opening paragraph of the interrogatory but rather described Defendant's defenses. Without waiving said objections, see Plaintiffs' response to subsection (a) below:

a. Pease see the Facsimile from Frank Wilson, dated February 08, 2010 (City5331) and City Notice dated January 26, 2016 (City0026).

With respect to the subjects of good faith and willfulness, the parties have yet to complete discovery on those issues. The City objected to Plaintiffs engaging in discovery on those issues in the liability phase of the case (including instructing witnesses not to answer those questions). As such, Plaintiffs will supplement their responses as documents are produced during damages discovery.

**REQUEST NO. 7:**

All documents which have been provided or may or will be provided to any expert or lay witness who may or will be called to testify on Plaintiffs' behalf during discovery or at trial or any evidentiary hearing in this matter.

**RESPONSE:**

Objection. Rule 26 provides, in pertinent part:

> Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> **(i)** relate to compensation for the expert's study or testimony;
>
> **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

While plaintiffs' counsel and their expert have literally hundreds of communications with their expert, the expert has not yet compiled a report or been asked to form opinions. Accordingly, Plaintiffs do not have in their possession any communications with their expert that identify facts or data that counsel provided and the expert considered in forming opinions that he has not yet rendered. The same can be said for communications that identify assumptions provided by counsel that the expert relied upon in forming opinions. Hence, the request for communications with the expert is obviously premature and will be revisited when opinions are formed and a report is written.

Without waiving said objection, please see the updated CV of Mr. Simpson, which is attached to Plaintiffs' answers to interrogatories. Additionally, please refer to the DCI rate sheet that was turned over to defendant's lead counsel on April 6, 2022, at 10:33 am. The rates contained therein remain in effect. Moreover, attached to Plaintiffs' answers to interrogatories is a document completed by Mr. Simpson with the information regarding cases where testimony was given in the preceding four years.

**REQUEST NO. 8:**

All documents exchanged between and/or among Plaintiffs, their counsel and any expert, opinion witness or consulting expert retained, contacted, utilized, consulted or employed in connection with this case, which includes but is not limited to Murray Simpson, currently of DCI Consulting.

**RESPONSE:**

Objection. Rule 26 provides, in pertinent part:

> Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> **(i)** relate to compensation for the expert's study or testimony;
>
> **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

While plaintiffs' counsel and their expert have literally hundreds of communications with their expert, the expert has not yet compiled a report or been asked to form opinions. Accordingly, Plaintiffs do not have in their possession any communications with their expert that identify facts or data that counsel provided and the expert considered in forming opinions that he has not yet rendered. The same can be said for communications that identify assumptions provided by counsel that the expert relied upon in forming opinions. Hence, the request for communications with the expert is obviously premature and will be revisited when opinions are formed and a report is written.
Without waiving said objection, please see the updated CV of Mr. Simpson, which is attached to Plaintiffs' answers to interrogatories. Additionally, please refer to the DCI rate sheet that was turned over to defendant's lead counsel on April 6, 2022, at 10:33 am. The rates contained therein remain in effect. Moreover, attached to Plaintiffs' answers to interrogatories is a document completed by Mr. Simpson with the information regarding cases where testimony was given in the preceding four years.

**REQUEST NO. 9:**

All documents that refer or relate to any expert, opinion witness or consulting expert retained, contacted, utilized, consulted or employed in connection with this case (including but not limited to Murray Simpson, currently of DCI Consulting), including, without limitation, all expert reports, curriculum vitae or other documents related to the expert's qualifications, engagement letters or fee agreements, notes, communications and all documents given to the expert to review.

**RESPONSE:**

Objection. Rule 26 provides, in pertinent part:

> Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> > **(i)** relate to compensation for the expert's study or testimony;
> >
> > **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> >
> > **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

While plaintiffs' counsel and their expert have literally hundreds of communications with their expert, the expert has not yet compiled a report or been asked to form opinions. Accordingly, Plaintiffs do not have in their possession any communications with their expert that identify facts or data that counsel provided and the expert considered in forming opinions that he has not yet rendered. The same can be said for communications that identify assumptions provided by counsel that the expert relied upon in forming opinions. Hence, the request for communications with the expert is obviously premature and will be revisited when opinions are formed and a report is written.

Without waiving said objection, please see the updated CV of Mr. Simpson, which is attached to Plaintiffs' answers to interrogatories. Additionally, please refer to the DCI rate sheet that was turned over to defendant's lead counsel on April 6, 2022, at 10:33 am. The rates contained therein remain in effect. Moreover, attached to Plaintiffs' answers to interrogatories is a document completed by Mr. Simpson with the information regarding cases where testimony was given in the preceding four years.

**REQUEST NO. 10:**

All documents provided to a testifying expert in this case, including, but not limited to communications from attorneys, data, or drafts to the extent allowed for by F.R.C.P 26(a)(2).

**RESPONSE:**

Objection. Rule 26 provides, in pertinent part:

> Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> > **(i)** relate to compensation for the expert's study or testimony;
> >
> > **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

> **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

While plaintiffs' counsel and their expert have literally hundreds of communications with their expert, the expert has not yet compiled a report or been asked to form opinions. Accordingly, Plaintiffs do not have in their possession any communications with their expert that identify facts or data that counsel provided and the expert considered in forming opinions that he has not yet rendered. The same can be said for communications that identify assumptions provided by counsel that the expert relied upon in forming opinions. Hence, the request for communications with the expert is obviously premature and will be revisited when opinions are formed and a report is written.

Without waiving said objection, please see the updated CV of Mr. Simpson, which is attached to Plaintiffs' answers to interrogatories. Additionally, please refer to the DCI rate sheet that was turned over to defendant's lead counsel on April 6, 2022, at 10:33 am. The rates contained therein remain in effect. Moreover, attached to Plaintiffs' answers to interrogatories is a document completed by Mr. Simpson with the information regarding cases where testimony was given in the preceding four years.

## REQUEST NO. 11:

All documents that Plaintiffs intend to or will rely on to support any challenge to the City's manually maintained and/or electronic timekeeping records.

## RESPONSE:

Objection. This interrogatory is broad, vague, and does not explain or define what "challenge" means in the scope of this litigation. Without waiving said objection, please see all the City's manually maintained and/or electronic timekeeping records produced by Defendant to Plaintiffs in this litigation.

                                  Respectfully submitted,

                                  By: *Ronald C. Dahms*
                                  One of Plaintiffs' Attorneys

Law Offices of Paul D. Geiger
540 West Frontage Road
Suite 3020
Northfield, IL 60093

                                  **CERTIFICATE OF SERVICE**

I, Ronald C. Dahms, an attorney, certify that I served Plaintiffs Responses to Defendant City of Chicago's Second Request for Production of Documents, via email, on December 2, 2022, to the following:

Jennifer A. Naber
Matt Kellam
Laner, Muchin, Dombrow,
Becker, Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, IL 60654-4688

By: /s/ Ronald C. Dahms
One of Plaintiffs' Attorneys

Law Offices of Paul D. Geiger
540 West Frontage Road
Suite 3020
Northfield, IL 60093
(312) 609-0060

9